## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| Vyera Pharmaceuticals, LLC, *et al.*,[1] | Case No. 23-10605 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: September 5, 2023 at 4:00 p.m. (ET)** |
| | **Hearing Date: September 13, 2023 at 10:00 a.m. (ET)** |

**MOTION OF CEROVENE, INC. AND DR. REDDY'S LABORATORIES, INC.
(A) OBJECTING TO THE CLAIMS FILED BY MARTIN SHKRELI WHICH SHOULD
BE DISALLOWED IN THEIR ENTIRETY; OR (B) IN THE ALTERNATIVE,
ESTIMATING THE CLAIMS FILED BY MARTIN SHKRELI AT $0.00; AND
(C) PRECLUDING SHKRELI FROM VOTING FOR OR AGAINST THE PROPOSED
PLAN OR IN ANY OTHER WAY INFLUENCING THE DEBTORS OR INFLUENCING
OR PARTICIPATING IN THIS PROCEEDING**

*TO CLAIMANT WHOSE DISPUTED CLAIM IS SUBJECT TO THIS OBJECTION:*

*\*YOUR SUBSTANTIVE RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND ANY
FURTHER OBJECTION THAT MAY BE FILED IN THIS CHAPTER 11 CASE.*

*\*\*THE RELIEF SOUGHT IN THIS OBJECTION IS WITHOUT PREJUDICE TO THE
RIGHTS OF THE DEBTORS OR THE MOVANTS TO PURSUE FURTHER OBJECTIONS
TO THE DISPUTED CLAIMS.*

Cerovene, Inc. ("**Cerovene**") and Dr. Reddy's Laboratories, Inc. ("**Dr. Reddy's**" and together with Cerovene, the "**Movants**"), by and through their counsel, Greenberg Traurig LLP, hereby submit this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) objecting to Claim Numbers 10045 and 11 (the "**Objection**") filed by Martin Shkreli ("**Shkreli**"), (b) estimating at $0.00 for all purposes

---

[1] The Debtors in these subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are as follows: Vyera Pharmaceuticals, LLC (1758); Oakrum Pharma, LLC (3999); SevenScore Pharmaceuticals, LLC (2598); Phoenixus AG (1091); Dermelix Biotherapeutics, LLC (4711); and Orpha Labs AG. The Debtors' headquarters and the mailing address for the Debtors is 600 3rd Avenue, 19th Floor, New York, NY 10016.

in these bankruptcy cases Claim Numbers 100045 and 11 filed by Shkreli (the "**Shkreli Claims**") against Debtors Vyera Pharmaceuticals, LLC ("**Vyera**") and Phoenixus AG ("**Phoenixus**"), and (c) precluding Shkreli from voting for or against the proposed plan or in any other way influencing the Debtors or participating in this proceeding. In support of the Motion, the Movants state as follows:

## PRELIMINARY STATEMENT

1.      Shkreli contends that he has a $93 million claim for indemnification from Phoenixus and a $75 million claim for indemnification from Vyera.  Although the Shkreli Claims contain no details or any facts regarding his claims, they presumably relate to his liability for his wrongful and unlawful anticompetitive scheme in violation of the Sherman Act.  This liability arose from Shkreli's own, intentional illegal conduct.  Specifically, after Vyera acquired the U.S. licensing rights to Daraprim, Shkreli increased the price of the drug from $17.60 per tablet to $750.00 per tablet (a 4,000% increase), and then implemented his unlawful scheme to maintain Vyera's monopoly on Daraprim by blocking competition from generic products, by: (a) intentionally closing the distribution of Daraprim so potential generic competitors could not acquire Daraprim samples necessary to develop a generic version; and (b) intentionally tying up the manufacturers of the active pharmaceutical ingredient ("**API**") in Daraprim in exclusive supply agreements, so potential generic competitors could not obtain API supplies from the existing manufacturers.

2.      In 2020, the Federal Trade Commission ("**FTC**") and several state attorneys general sued Shkreli and the Debtors for violation of Sections 1 and 2 of the Sherman Act and various state antitrust laws ("**FTC Action**"). After the FTC and the States settled with the Debtors, they proceeded to trial against Shkreli in December 2021, in which the United States District Court

for the Southern District of New York found that Shkreli's actions were anticompetitive and violated federal and state antitrust laws as unlawful conspiracies in restraint of trade and as unlawful monopolization of the Daraprim market.  In its 135-page opinion (attached to the Declaration of Roger Kaplan, submitted herewith ("**Kaplan Dec.**"), as Exhibit A), the District Court was crystal clear that "Shkreli was the prime mover in this anticompetitive scheme. It was his brainchild and he drove it each step of the way."  Kaplan Dec. Ex. A, at 133.  The District Court ordered that Shkreli disgorge the profits reaped from his illegal scheme, entering a judgment against Shkreli in the amount of $64.6 million.  Kaplan Dec. Ex. B.  The District Court also entered a permanent injunction prohibiting Shkreli from "directly or indirectly participating in any manner in the pharmaceutical industry" or "[t]aking any action to directly or indirectly influence or control the management or business of any Pharmaceutical Company" for life.  *Id.*

3.      As a matter of law and public policy under the antitrust laws, Shkreli cannot be indemnified against liability arising from his own, intentionally unlawful actions in violation of the antitrust laws (including the judgment for $64.6 million, the interest incurred thereon, or his defense costs related to the FTC Action).  As a result, all of Shkreli's claims fail, and the Shkreli Claims should be disallowed and expunged in their entirety.

4.      In addition, and aside from the controlling and overring federal law and policy, Shkreli's claims against Phoenixus (a Swiss corporation) fail because neither Phoenixus's governing documents nor Swiss law entitles Shkreli to indemnification.  And, as for Vyera, the Operating Agreement for Vyera (a Delaware LLC) provides for indemnification of members and officers in limited circumstances, but expressly states that members and officers are *not* entitled to indemnification for gross misconduct or intentional misconduct in violation of law.  Delaware law contains a similar exception to indemnification.  In the FTC Action, the District Court made

extensive factual findings that establish Shkreli's *intentional* wrongful and illegal activities which, at a minimum, constitute gross misconduct, and Shkreli has not challenged those findings on appeal.[2]

5.    Even if the Shkreli Claims are not disallowed entirely at this time, they should be estimated at $0.00.  The Shkreli Claims for indemnification are contingent upon Shkreli's ultimate disgorgement liability for the judgment entered against him in the FTC Action, but Shkreli has appealed that judgment (claiming that the remedy of disgorgement was improperly imposed), which appeal is pending.  It will take months – if not years – to finally resolve Shkreli's appeal, and his contingent claims against the Debtors for indemnification.  Given the amount of the Shkreli Claims, this would significantly delay confirmation of the Plan and distribution of the majority of the Debtors' assets.  Thus, even if the Shkreli Claims are not disallowed in their entirety, the Court should estimate the Shkreli Claims at $0.00 for all purposes in these Chapter 11 Cases, in order for the Debtors to be able to confirm its chapter 11 plan within a reasonable period of time.

6.    Finally, given the final injunction against Shkreli in the FTC Case, which enjoins him for life from "participating in" or "[t]aking any action to directly or indirectly influence or control the management or business of any Pharmaceutical Company" (Kaplan Dec. Ex., B),  if the Shkreli Claims are not disallowed in their entirety, or if not estimated at $0.00), Shkreli should be precluded from voting for or against the proposed Plan or in any other way influencing or participating in the Debtors' affairs or influencing or participating in this proceeding.

---

[2] His appeal before the Second Circuit does not in any way challenge the District Court's factual and legal findings of Shkreli's intentional antitrust violations, but, rather, only challenges the remedies imposed of: (i) disgorgement of unjust profits; and (i) the lifetime injunction as being overbroad in prohibiting speech that would seek to influence the actions of a pharmaceutical company (but does not challenge the injunction prohibiting acts to direct or influence a pharmaceutical Company. *See* Kaplan Dec. Ex. C.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion and Objection over these Chapter 11 subchapter V cases (the "**Chapter 11 Cases**"), the Debtors, property of the Debtors' estates, and this matter under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory predicates for the relief requested herein are section 502 the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

10.      Pursuant to Local Rule 9013-1(f), the Movants consent to entry of a final judgment or order with respect to the Motion if it is determined that the Court lacks authority under Article III of the United States Constitution to enter such final order or judgment absent consent of the parties

## BACKGROUND

### A.      Status of the Chapter 11 Cases

11.      On May 9, 2023 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**") and elected to proceed under subchapter V thereunder.  The next day, the Debtors filed their *Joint Subchapter V Plan of Reorganization and Liquidation* [Doc. No. 11].  Additional information about the Debtors' businesses and the events leading to the commencement of these subchapter V cases can be found in the First Day Declaration.

12.      The Debtors are continuing in possession of their respective properties and are continuing to operate their businesses as debtors in possession pursuant to section 1184 of the

Bankruptcy Code.  On May 10, 2023, the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**") appointed David M. Klauder as the Subchapter V Trustee in these subchapter V cases (the "**Subchapter V Trustee**").  The U.S. Trustee held a meeting of creditors pursuant to section 341 of the Bankruptcy Code on June 6, 2023.

13.     By Notice of Chapter 11 Bankruptcy Case filed on May 22, 2023 [Doc. No. 52], July 10, 2023 was fixed as the last day for filing proofs of claim in these Chapter 11 Cases for all claims arising before the Petition Date.

14.     On July 11, 2023, the Debtors filed the *Debtors' Amended Joint Subchapter V Plan of Reorganization and Liquidation* [Doc. No. 157] (the "**Amended Plan**").

**B.**     **Background**

15.     In 2015, Vyera acquired the U.S. licensing rights to Daraprim from the then-owner, Impax Laboratories.  After purchasing the rights to Daraprim, Shkreli caused Vyera to raise the price of the drug from $17.60 to $750 per tablet(a 4,000% increase).  Then, Shkreli implemented an anticompetitive scheme to block the entry of generic drug competition into the market in order to maintain the sales of Daraprim at the increased monopoly price.  First, Shkreli implemented a closed distribution system for Daraprim, which prevented pharmacies and distributors from selling samples of Daraprim to potential generic competitors that they needed in order to conduct equivalency tests to develop a generic version of Daraprim.  Second, Shkreli improperly forced the two most important manufacturers of the API for Daraprim to enter into exclusive supply agreements, preventing potential generic competitors from obtaining API for their generic versions of Daraprim.  All of these facts are established in the District Court's opinion in the FTC Action which binds and collaterally estops Shkreli from denying them.  *See* Kaplan Dec. Ex. A; *In re Samson Res. Corp.*, 786 F. App'x 364, 367, n.2 (3d Cir. 2019) (pending appellate challenges in

prior proceeding did not prevent application of collateral estoppel).[3]

16.     On December 18, 2015, Shkreli was arrested and charged with securities fraud in connection with prior dealings unrelated to the Debtors.  Mr. Shkreli was CEO of Vyera (then called Turing Pharmaceuticals LLC) until his arrest.  He served as chair of the Board of Phoenixus (then called Turing AG), which wholly owned Vyera, until January 20, 2016, and he resigned from the Board entirely on February 10, 2016. Thus, he was not an officer of Vyera after December 18, 2015, and was not a director of Phoenixus after February 10, 2016.[4]

17.     On January 27, 2020, the FTC and a number of state attorneys general sued Shkreli, then CEO of Vyera, Kevin Mulleady, Vyera, and Phoenixus in the United States District Court for the Southern District of New York for civil violations of federal and state antitrust laws.  On the eve of trial in late 2021, the Debtors (and Mulleady) settled the FTC Action against them, and Shkreli proceeded to trial alone.

18.     Following a one-week bench trial, on January 14, 2022, the District Court issued a 135-page opinion and order, finding that Shkreli intentionally violated Sections 1 and 2 of the Sherman Act and various state antitrust laws.  The District Court enjoined him from "participating in" the pharmaceutical industry for life, and from "[t]aking any action to directly or indirectly influence or control the management or business of any Pharmaceutical Company" (Kaplan Dec. Ex. B); and ordered him to pay $64.6 million in disgorgement of the profits reaped as a result of

---

[3] Daraprim is an anti-parasite drug that treats parasitic diseases such as toxoplasmosis and, as a result, is an important drug in the treatment of patients with HIV. Thus, Shkreli not only imposed a 4,000% price increase on sufferers of HIV, but then intentionally took unlawful and anticompetitive actions to protect that price and monopolize the market by preventing generic versions of Daraprim. One can hardly conceive of one less deserving of indemnification for his unlawful conduct that preyed upon HIV sufferers.

[4] However, thereafter, Shkreli remained Phoenixus' largest shareholder and continued to exert control over the Debtors' operations directing the antitrust violations that were thereafter implemented.  Indeed, even when Shkreli was incarcerated after a federal jury convicted him of securities fraud and conspiracy in August 2017, Shkreli continued to direct the Debtors' businesses from prison using a contraband cell phone.

Shkreli's anticompetitive scheme. *See id*. at 135. The District Court's damages award equaled the illicit profits obtained through the anticompetitive conduct. *See id*. at 132. Shkreli has appealed the District Court's judgment, and that appeal is currently pending before the U.S. Court of Appeals for the Second Circuit. Notably, however, Shkreli does not appeal the *substance* of the District Court's factual and legal findings against him that he intentionally violated the antitrust laws -- rather, he only challenges the District Court's legal ability to require disgorgement and the scope of the permanent injunction. *See* Kaplan Dec. Ex. C.

19.     Shkreli filed the following claims against the Debtors in these Chapter 11 Cases:

● **Claim Number 10045.** On July 7, 2023, Shkreli filed Claim Number 10045 in the amount of $93,000,000.00 against Debtor Phoenixus AG, $75,000,000.00 of which is asserted to be a priority claim under Section 507(a)(8) of the Bankruptcy Code as "Indemnification claim of fees, harm, costs, judgment & fees". There are no details or backup provided with the proof of claim.

● **Claim Number 11.** On July 10, 2023, Shkreli filed Claim Number 11 in the amount of $75,000,000.00 against both Debtors Vyera Pharmaceuticals LLC and Phoenixus AG in the amount of $75,000,000.00 which is asserted to be a priority claim under Section 507(a)(8) of the Bankruptcy Code. There are no details or backup provided with the proof of claim. Nor can we determine whether Claim 11 is included within Claim 10045.

20.     The Shkreli Claims contains no detail, facts or backup at all with respect to the basis for the Claims and, explained below, lack any validity whatsoever.

**RELIEF REQUESTED**

21.     By this Motion, the Movants seek entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, (a) expunging the Shkreli Claims in their entirety; (b) in the alternative, estimating the Shkreli Claims for all purposes in these Chapter 11 Cases (including allowance, voting, and distribution under any chapter 11 plan), at $0.00; and (c) if the Shkreli Claims are not disallowed in their entirety, or if not estimated at $0.00, Shkreli should be precluded from voting for or against the proposed Plan or in any other way influencing or

participating in the Debtors' affairs or influencing or participating in this proceeding.

## BASIS FOR RELIEF REQUESTED

### I.        OBJECTION TO SHKRELI CLAIMS

22.    Pursuant to Section 502(a):

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a ***party in interest***, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a) (emphasis provided).  Although a "party in interest" is not defined, the provision gives one example to illustrate the expansive nature of the term and does not limit its application in any way.  Indeed, the Eleventh Circuit has found that "[a]ll creditors of a debtor are parties in interest." *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1551 n.5 (11th Cir. 1990) (citing 8 Collier on Bankruptcy ¶ 3020.04 (15th ed. 1989)).    Consequently, the plain language of the Bankruptcy Code permits creditors, such as the Movants, to be a "party in interest" and object to a claim.  Fed. R. Bankr. P.  3007 governing objection to claims also provides no limitation to a creditor objecting to claims.

23.    Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and a hearing, shall determine the allowed amount of the claim. *See* 11 U.S.C. § 502(b).

24.    Section 502(b)(1) of the Bankruptcy Code provides, in part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  When asserting a proof of claim against a bankrupt estate under section 502 of the Bankruptcy Code, the initial burden of proof lies with the claimant to allege facts sufficient to support the liability.  *In re Allegheny*

*Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). If the proof of claim contains sufficient support, it is considered *prima facie* valid, and the burden then shifts to the objector to produce evidence sufficient to negate such validity. *Id*. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id*. The burden of persuasion with respect to the claim is always on the claimant. *Payne v. Lampe* (*In re Lampe*), 665 F.3d 506, 514 (3d Cir. 2011).

### A.  The Shkreli Claims Lack *Prima Facie* Validity

25.      The Shkreli Claims lack *prima facie* validity. A claim, as defined by section 101(5), is a "right to payment [or] right to an equitable remedy". 11 U.S.C. § 101(5). Section 501(a) provides that a creditor having such a right to payment or an equitable remedy may file a proof of claim in a debtor's case. 11 U.S.C. § 101(5). The substantive basis for the allowance of a claim is governed by sections 501 and 502. The procedure for the filing of a claim is governed by Bankruptcy Rule 3001, among others.

26.      Bankruptcy Rule 3001(a) provides for the form and content of a proof of claim and requires substantial conformance to the appropriate Official Form. When a claim is based on a "writing", such as a contract, Bankruptcy Rule 3001(c) provides that "a copy of the writing shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c). To receive the *prima facie* validity accorded under the Bankruptcy Rules and satisfy the claimant's initial obligation to proceed, the proof of claim must set forth the facts necessary to support the claim. *In re Allegheny Int'l, Inc*., 954 F.2d at 173; *see In re New Century Trs Holdings, Inc*., 495 B.R. 625, 633 (Bankr. D. Del. 2013) ("A proof of claim that lacks the supporting documentation required by Rule 3001 does not

receive the presumption of *prima facie* validity."); *In re Stock Bldg. Supply, LLC*, 433 B.R. 460, 463 (Bankr. D. Del. 2010) ("In filing a proof of claim in a bankruptcy case, the claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant."). If a party objecting to a proof of claim presents sufficient evidence to refute the sufficiency of the claim, then the burden of proof reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *In re Allegheny Int'l, Inc*., 954 F.2d at 173.

27.      The Shkreli Claims are woefully deficient and not entitled to *prima facie* validity. The Shkreli Claims consist of proof of claim forms that merely contain the amount of the claim and the non-factual, purely conclusory statement that the claim is for "[i]ndemnification claim of fees, harm, costs, judgment & fines".  Shkreli failed to provide any facts, details or information to support or explain the claim.  Shkreli, a convicted felon, did not attach a single document to support his indemnification claim, nor did he explain his failure to provide such documentation.  In sum, Shkreli has not carried his initial burden of proof, as he failed to include *any* factual support whatsoever.  The Shkreli Claims do not set forth the facts – or *any* facts – to support the claim and, thus, is deprived of *prima facie* validity. *In re Allegheny Int'l, Inc*., 954 F.2d at 173-74; *see In re New Century Trs Holdings, Inc*., 495 B.R. at 633; Fed. R. Bankr. P. 3001(f).  Although Shkreli maintains the burden of proving his claim by a preponderance of the evidence, his failure to provide support for his claim in and of itself provides a basis to disallow the claims.  *See, e.g., In re Kirkland*, 572 F.3d 838, 840-41 (10th Cir. 2009) (disallowing claim where an unsecured creditor fails to provide any supporting documentation and does not explain such failure).  In any event, Shkreli retains the ultimate burden of proof with respect to his claims.  *In re Lampe*, 665 F.3d at 514.

**B.      Shkreli Cannot Establish Any Valid Claim and, Therefore, His Claims Should be Disallowed in Their Entirety**

28.      In addition to his failure to articulate any basis for his claims in the Proofs of Claim he filed, Shkreli's indemnification claims fail on the merits as a matter of law.  Accordingly, the Shkreli Claims should be disallowed and stricken in their entirety.

29.      First, there is no legal basis for Shkreli to demand indemnification from Phoenixus. Phoenixus is a Swiss corporation, and Shkreli was a board member (not an officer) during a portion of the relevant time period.  Under Swiss law, directors of Swiss corporations do not have a statutory right to indemnification.  Moreover, Phoenixus's Articles of Incorporation also do not provide for any contractual right to indemnification.  *See* Kaplan Dec. Ex. D.  Simply put, Shkreli's claims against Phoenixus have no basis whatsoever.

30.      Vyera is a Delaware LLC, and under Delaware law, may provide for indemnification pursuant to its Operating Agreement, and may set restrictions upon any such right to indemnification.  *See* 6 Del. C. § 18-108 ("*Subject to such standards and restrictions, if any, as are set forth in its limited liability company agreement*, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever.") (emphasis added).

31.      While Shkreli was an officer of Vyera, Verya's Operating Agreement did not provide for indemnification of officers (indemnification was limited to members, e.g., Pheonixus). Kaplan Dec. Ex. E, at § 5.5.  Thus, Shkreli has no right to indemnification as an officer of Vyera.

32.      After Shkreli was arrested on December 15, 2015, he resigned as an officer of Vyera.  After Shkreli resigned as an officer of Vyera, Vyera's Operating Agreement was amended, first on June 17, 2016 and then again on October 24, 2018, and currently provides for indemnification of officers under certain circumstances.  However, Shkreli was not an officer when

those amendments were enacted, and is not entitled to indemnification pursuant to those subsequent amendments.

33.    Moreover, the amended indemnification provision in Vyera's Operating Agreement expressly precludes indemnification for liability arising from gross misconduct, as follows:

> To the extent not inconsistent with the Act and other applicable law, the Company, its receiver, or its trustee, shall indemnify the Member, its assigns and ever officer of the Company, and such Member's or officer's heirs, executors, administrators, successors and assigns, against, and safe them and each of them harmless from, any claim, demand, judgment, or liability and against and from any loss, cost, or expense (including, without limitation, reasonable attorneys' fees and court costs, which may be paid by the Company as incurred), which may be made or imposed upon any such party by reason of (i) any act performed for or on behalf of the Company or in furtherance of the Company's business, (ii) any inaction on the part of any such party, or (iii) any liability arising under federal and state securities laws, to the extent permitted by law, so long as such indemnified party has acted in furtherance of a good faith believe that such course of conduct was in the best interest of the Company *and such conduct did not constitute gross negligence, gross misconduct, fraud, breach of fiduciary duty or breach of a material term of this Agreement.*

Kaplan Dec. Ex. F, at § 11.1 (emphasis added).

34.    Shkreli's liability in the FTC Action resulted from his gross – indeed, *intentional* – misconduct in violation of the antitrust laws.

35.    It is indisputable that Shkreli's liability in the FTC Action arose from his gross and intentional misconduct.  The District Court in the FTC Action concluded that Shkreli intentionally violated §§ 1 and 2 of the Sherman Act and various state antitrust laws.  The District Court specifically found that Shkreli acted and directed Vyera's actions "with the intent to raise [Daraprim's] prices, block generic competition, and reap extraordinary profits."  Wong Dec. Ex. A, at 27; *see also id*. at 80 ("Shkreli founded Vyera. He did so with the intention to use Vyera to acquire a pharmaceutical that was the sole source of treatment for a life-threatening ailment, raise the drug's price sky-high, and keep it sky-high for as long as possible by blocking generic

competition.").

36.     The District Court found that Shkreli specifically directed Vyera to implement the various aspects of his anticompetitive plan, including the finding that Shkreli specifically and intentionally caused Vyera to implement a closed distribution system for Daraprim to prevent potential generic competitors from obtaining Daraprim samples. *Id*. at 34-43; *see also id*. at 81 ("To block generic competition, Shkreli devised a highly restrictive, closed distribution system for Daraprim and told Vyera that it was a top priority to put it in place by the time of the price hike.").

37.     The District Court further found that Shkreli specifically and intentionally caused Vyera to tie up manufacturers of Daraprim API in exclusive supply agreements to prevent potential generic competitors from obtaining supply of Daraprim API. *Id*. at 43-53; *see also id.* at 81 ("Shkreli decided to pursue an exclusive supply contract with Fukuzyu.  As Tilles, Shkreli's immediate successor as CEO, explained, the 2017 Fukuzyu contract was "something [Shkreli] wanted and it happened." As the arrival of a generic competitor grew more likely, in 2017 Shkreli decided to pursue an exclusive supply contract with pyrimethamine manufacturer RL Fine as well.").

38.     In sum, the District Court found that "Shkreli was the prime mover in this anticompetitive scheme.  It was his brainchild and he drove it each step of the way." *Id*. at 133; *see also id.* at 82 ("Shkreli initiated every anticompetitive decision that Vyera pursued to its conclusion.  He maintained 'shadow control' of the company, staying in close contact with Vyera's directors and officers, providing guidance on how to maintain control of the market, and threatening to use his authority as the largest shareholder to call an extraordinary general meeting ("EGM") that would install more pliant officers and directors.  He did exactly that in 2017 and

again in 2020, each time installing loyalists.").[5]

39.     Thus, even if Shkreli was covered by the indemnification provisions (he is not), his intentional violations of federal and state antitrust law plainly constitute "gross misconduct," liability for which is not indemnifiable under Vyera's Operating Agreement.

40.     Moreover, as a matter of overriding federal public policy, individuals cannot be indemnified for antitrust violations. *See Wills Trucking, Inc. v. Balt. & O. R.R.*, 1999 U.S. App. LEXIS 9832, at *7 n.1 (6th Cir. 1999) (noting that indemnification for an antitrust judgment was unavailable because the defendant was not entirely blameless for the violations); *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (holding that the defendant seeking contribution or indemnification for antitrust liability must be an innocent actor); *Koch Indus. Hoecht Aktiengesellshaft*, 727 F. Supp. 2d 210 (S.D.N.Y 2010) (upholding indemnification of successor corporation by predecessor corporation of antitrust violations committed by predecessor corporation prior to acquisition because the antitrust violations were not disclosed prior to the acquisition and the party seeking indemnification was wholly innocent of the antitrust violations). As the courts note, such holdings are required to further and support the deterrent effect of liability under the antitrust laws for violations, prohibiting indemnification of any individual unless he was "entirely blameless" for the violations – a standard that, plainly, Shkreli cannot satisfy given the District Court's decision in the FTC Action. *See Prof'l Beauty Supply, Inc. v. Nat'l Beauty Supply, Inc.*, 594 F.2d 1179, 1186 (8th Cir. 1979) (noting that "the Supreme Court

---

[5] As noted above, Shkreli was only CEO of Vyera until his arrest in December 2015, and the implementation anticompetitive scheme occurred thereafter. As a result, given that he was not an officer of Vyera at the time his anticompetitive scheme was implemented and put into action, there is *no basis* for Shkreli to claim indemnification from Vyera for that conduct since it was not taken as an officer of Vyera. *See Marino v. Patriot Rail Co.*, 131 A.3d 325, 338–40 (Del. Ch. 2016) (right to indemnification under Delaware law depends on "the individual's capacity at the time of the events giving rise to the suit. . . . whether the individual became involved in the litigation 'by reason of' the individual's service *in a covered capacity*.") (emphasis added). Because Shkreli was no longer CEO of Vyera at the time his unlawful scheme was put into effect *(i.e.,* in 2016-2019) he was no longer acting "in a covered capacity" under the statute and under the Vyera Operating Agreement

[has] emphasized that the public interest and statutory aim of deterring antitrust violations and enforcing the antitrust laws are of paramount importance. To allow indemnification would dilute the deterrent impact of the antitrust laws. Only a realistic possibility of liability for damages will encourage compliance with the antitrust laws and will protect the public interest in preserving competition. Consequently, even if one joint tortfeasor bears greater responsibility for the wrongdoing, a person who violates the antitrust statutes should not be entitled to full indemnification from the more culpable third party.") (citing *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138-39 (1968)).[6]

41.     Shkreli's conduct was intentional and illegal, and constitutes gross misconduct for which he cannot be indemnified.  Accordingly, the Shkreli Claims should be disallowed and stricken in their entirety.

## II.     ALTERNATIVE MOTION TO ESTIMATE THE SHKRELI CLAIMS AT $0.00

42.     Section 502(c) of the Bankruptcy Code provides that "[t]here *shall be* estimated for purpose of allowance under this section any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c) (emphasis provided).  The claims estimation process envisioned by section 502(c) "provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003). Section 502(c) thus requires a bankruptcy court to estimate a claim where liquidation of that claim would otherwise unduly delay the reorganization process. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994,

---

[6] This applies to both the federal antitrust laws and state antitrust laws and violations, given that state antitrust laws are patterned after and follow federal law.

1011–12 (4th Cir. 1986) (noting that the duty to estimate contingent or unliquidated claims is "a mandatory obligation of the bankruptcy court" where otherwise the claim would cause undue delay).

43.     In order to determine whether "undue delay" under Section 502(c) exists, a court should exercise "judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question." *In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 222 (Bankr. D. Or. 2006) (internal quotation marks omitted); *see Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 138 n.9 (3d Cir. 1982) ("Congress has given the bankruptcy courts broad discretion to estimate a claim pursuant to section 502(c)(1)."). This analysis implicates both (1) "how long it will take before . . . [a] claim will be liquidated and determined" by an alternative forum and (2) whether a "plan of reorganization can be confirmed so long as [the relevant] claim remains unliquidated and not estimated." *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986). Indeed, courts have consistently undertaken the claims estimation process where a failure to do so would jeopardize the debtor's ability to consummate a chapter 11 plan. *See, e.g., id.* (ordering estimation because "[n]o plan of reorganization can be confirmed so long as this claim remains unliquidated and not estimated"); *In re Lionel L.L.C.*, 2007 WL 2261539, at *4 (Bankr. S.D.N.Y. Aug. 3, 2007) (ordering estimation because "[a] liquidation or further reorganization contingency cannot realistically be provided for in a plan, when neither the likelihood of an adverse judgment, nor timing and amount of such a judgment, can be predicted with any certainty").

44.     Here, even aside from their lack of merit as a matter of law and if not barred in their entirety, any contingency created by the Shkreli Claims is an impediment to the Debtors' ability to confirm and consummate their chapter 11 plan. Even if not disallowed in their entirety,

resolution of Shkreli's appeal could take years to resolve. Thus, even if not disallowed as a matter of law, the Shkreli Claims present two obstacles to confirmation. Not only would litigating the dubious merits of the Shkreli Claims materially delay these Chapter 11 Cases, drain the Debtors' already scarce resources, and severely diminish creditor recoveries, but the claims are themselves contingent upon the outcome of Shkreli's pending appeal before the Second Circuit and unlikely to succeed given the seriousness of the violations and the fact that Shkreli does not in any way challenge the District Court's factual and legal findings of those violations.

45.    While Shkreli does not challenge any of the District Court's factual or legal findings that establish his intentional, unlawful violations and gross misconduct, the appeal challenges the remedies of disgorgement and the permanent injunction. Kaplan Dec. Ex. C (Shkreli's Appellate Brief). With respect to the disgorgement order, Shkreli argues that, (1) under state law, the plaintiff states' claims for the remedy of disgorgement of Vyera's unjust profits was error because one party cannot be ordered to disgorge the unjust enrichment of another party, since disgorgement of unjust enrichment is limited to the enrichment received by a defendant, and is not joint and several; and (2) under federal law, the disgorgement claim against Shkreli was error because the federal antitrust laws do not provide a disgorgement remedy, and the FTC does not have authority to seek disgorgement – albeit the state plaintiffs do. Shkreli also challenges the permanent injunction, arguing that the lifetime ban from participating in the pharmaceutical industry was vague and overbroad and would restrict his free speech rights.

46.    Because the Shkreli Claims for indemnification are premised on his liability under the disgorgement order, Shkreli will not have any liability to be indemnified if he succeeds in his appeal challenging the legal bases for the remedy of disgorgement entered against him. Thus, even if not disallowed in their entirety as a matter of law, any resolution of the Shkreli Claims would

have to wait for that appeal to be resolved, and would also have to wait for the resolution of any subsequent appeal, the proceedings before the District Court on remand and/or any appeal thereafter by either party.  This will delay resolution of the Shkreli Claims (and the Chapter 11 Cases), by years.

47.    The Movants therefore respectfully submit that the facts and circumstances presented by the Shkreli Claims create precisely the type of situation that Congress envisioned in enacting section 502(c) of the Bankruptcy Code.  Simply put, the Debtors cannot confirm their plan without estimating the Shkreli Claims.  *See In re Imperial Corp. of Am.*, No. 90-01585, 1991 WL 281712, at \*4, 8 (Bankr. S.D. Cal. June 17, 1991) (finding that "the IRS claims taxes of such magnitude as to consume the entire balance on hand for distribution to creditors," but estimating IRS priority claims at zero).  And, for the reasons set forth below, the Court should estimate the Shkreli Claims at $0.00.

## A.    The Shkreli Claims are Unliquidated

48.    An unliquidated claim is one that cannot be determined through mathematical computations or agreements of the parties. *In re Interco, Inc.*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992) ("courts have consistently defined an unliquidated claim as one that is not subject to 'ready determination and precision in computation of the amount due' or 'capable of ascertainment by reference to an agreement or by simple computation.'"); *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295 (2d Cir. 1997) ("a debt is 'liquidated' . . . where the claim is determinable by reference to an agreement or by a simple computation.") (quoting 2 *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev. 1997)).  Here, the Shkreli Claims are an unliquidated amount chosen by Shkreli out of thin air and without any legal or factual justification.

49.    Moreover, as discussed above, Shkreli's claims for indemnification should be

disallowed in their entirety as a matter of law and, if not, are contingent upon his pending appeal and subsequent proceedings.

**B.**     **Liquidating the Shkreli Claims Would Unduly Delay the Chapter 11 Cases**

50.     If the Claims are not disallowed in their entirety as a matter of law, with the Shkreli Claims being unliquidated, it follows that awaiting liquidation of the Shkreli Claims would unduly delay the administration of these Chapter 11 Cases. *Bittner*, 691 F.2d at 137 (evaluating ultimate merits of tortious interference claims without awaiting final resolution of state court litigation, and estimating such claims at zero, in order to "avoid[] the possibility of a protracted and inequitable reorganization proceeding").

**C.**     **It is Necessary for the Court to Estimate the Shkreli Claims**

51.     Having established that liquidating the Shkreli Claims would unduly delay the administration of these Chapter 11 Cases, if the Shkreli Claims are not disallowed in their entirety, it would be necessary for the Court to estimate the claims.  Neither the Bankruptcy Code nor the Bankruptcy Rules specify the manner in which a claim is to be estimated. The Third Circuit, however, has provided guidance.

52.     In *Bittner*, the Third Circuit considered claims by plaintiffs to a state-court action that the bankruptcy court deprived them of property rights without due process of law by estimating their claims against a debtor to be zero (thereby precluding them from voting on the debtor's plan of reorganization).  The Third Circuit concluded that the bankruptcy court did not abuse its discretion in estimating the claims based upon the ultimate merits of the case rather than the "present value of the probability that [the claimants] would succeed in their state court action." *Bittner*, 691 F.2d at 136.  The Third Circuit also concluded that the bankruptcy court's findings of fact regarding the merits of the claims and the value of such claims were not clearly erroneous. *Id.* at 138-39.  As the Third Circuit concluded:

> Despite the lack of express direction on the matter, we are persuaded that Congress intended the procedure [contemplated by section 502(c)(1)] to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue. The principal consideration must be an accommodation to the underlying purposes of the [Bankruptcy] Code. It is conceivable that in rare and unusual cases arbitration or even a jury trial on all or some of the issues may be necessary to obtain a reasonably accurate evaluation of the claims. Such methods, however, usually will run counter to the efficient administration of the bankrupt's estate and where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value.

*Id.* at 135 (citations omitted).

53.     In estimating a claim, the court is bound only by "the legal rules which may govern the ultimate value of the claim . . . [and] those general principles which should inform all decisions made pursuant to the [Bankruptcy] Code," including the goal underlying chapter 11 that "a reorganization must be accomplished quickly and efficiently." *Id.* at 135-37 (citing 124 Cong. Rec. H11101-H11102 (daily ed. Sept. 28, 1978)).  Indeed, as noted by *Collier on Bankruptcy*: "In most cases in which a bankruptcy court embarks upon an estimation proceeding, ***it will be a summary affair which makes extensive use of offers of proof*** and provides little opportunity for the presentation of evidence through live testimony."  11-TX5 *Collier on Bankruptcy Taxation* P TX5.05[1] (emphasis provided).

54.     If the Shkreli Claims are not disallowed in their entirety, Movants respectfully submit that, for the reasons set forth in more detail below,  the Court need only consider the facts set forth in this Motion and those ascertainable from the record in these Chapter 11 Cases, as well as the Shkreli Claims, and public information regarding Shkreli's criminal conviction and judgment, the District Court Decision and the Debtors' financial wherewithal, in order to estimate the Shkreli Claims at $0.00.  Movants believe that the foregoing constitutes "sufficient evidence on which to base a reasonable estimate of the claim," *Bittner*, 691 F.2d at 135, without requiring Movants (and the Debtors and their true creditors) to bear the cost of an evidentiary hearing

(including any mini-trial or other type of streamlined evidentiary hearing).  A mini-trial or other summary or condensed evidentiary hearing, on the other hand, would be a costly and time-consuming endeavor, that would require Movants to seek discovery from Shkreli with respect to the Shkreli Claims.  Upon completion of such discovery, this Court would then need to liquidate the Shkreli Claims – even in a summary or condensed fashion – would be inefficient and wasteful, but would ultimately lead to the same result – estimation of the Shkreli Claims at $0.00.

      **D.**      <u>**The Court Should Estimate the Shkreli Claims at $0.00**</u>

55.      As discussed at length in Section II above, if the Shkreli Claims are not disallowed in their entirety as a matter of law as being factually and legally invalid, the Court should estimate the Shkreli Claims at $0.00 for all purposes in these Chapter 11 Cases.

**III.**      **IF THE SHKRELI CLAIMS ARE NOT DISALLOWED IN THEIR ENTIRETY, OR IF NOT ESTIMATED AT $0.00, SHKRELI SHOULD BE PRECLUDED FROM VOTING FOR OR AGAINST THE PROPOSED PLAN OR IN ANY OTHER WAY INFLUENCING THE DEBTORS OR INFLUENCING OR <u>PARTICIPATING IN THIS PROCEEDING</u>**

56.      Finally, if the Shkreli Claims are not disallowed in their entirety (Point I, above), or if not estimated at $0.00 (Point II, above), Shkreli should be precluded from voting for or against the proposed Plan or in any other way influencing or participating in the Debtors' affairs or influencing or participating in this proceeding.

57.      As noted above, on February 4, 2022, the Court in the FTC Case entered an Order for a Permanent Injunction (the "Injunction Order") against Shkreli which bars Shkreli for life from, *inter alia*,

> [t]aking any action to directly or indirectly influence or control the management or business of any Pharmaceutical Company; [or]

> [o]btaining, holding, or exercising any voting or other shareholder rights in a Pharmaceutical Company, including rights assigned to Defendant Shkreli by an Entity or individual, including rights assigned in connection with Shkreli's transfer of Ownership Interest in a Pharmaceutical Company to the Entity or individual.

Kaplan Dec. Ex. B.

58.     On June 14, 2023, Shkreli attorneys filed a letter in the FTC Case seeking permission for Shkreli to appear in these Bankruptcy Proceedings and "to assert a notice of claim for any potential rights he may have as a creditor" stating that Mr. Shkreli "will not use his position to influence corporate governance or the financial interests of the company itself." That letter further assured the Court that (a) merely "filing a notice of claim as a potential creditor vis-à-vis his indemnification rights against the Debtor will not violate [the Court's Injunction] Order or risk a finding of contempt"; (b) that his participation in this Bankruptcy Proceeding will "comport with the terms of [the Injunction] Order" by not taking action "to directly or indirectly influence or control the management or business of any Pharmaceutical Company"; or (c) to meddle in the financial interests of the [Debtors]." Kaplan Dec. Ex. G.

59.     In response, on June 16, 2023, the Court in the FTC entered an Order granting permission for Shkreli "to appear in the Bankruptcy Proceedings . . . on the representations made in Shkreli's application that his filing a claim or otherwise appearing in those proceedings will not violate the [Injunction] Order." Kaplan Dec. Ex. H.

60.     Plainly, given the terms of that June 16, 2023, Order, and given the representations in Shkreli's June 14, 2023, letter application, (a) any vote by Shkreli for or against the proposed Plan, or (b) any other actions by Shkreli which in any other way influences or participates in the Debtors' affairs or influences or participates in this proceeding, would be a violation of that Court's February 4, 2022, Injunction Order – and should be disallowed and prohibited by this Court.

## NOTICE

61.     Notice of this Motion will be provided in accordance with the Local Rules by filing this Notice of Motion and supporting papers with the courts ECF system and by providing notice

directly to: (i) Martin Shkreli via email at martin@martinshkreli.com (with a copy to his attorney, Brianne E. Murphy, at brianne@industrielaw.com); (ii) the Debtors and/or their counsel; (iii) the Office of the United States Trustee; (iv) the Subchapter V Trustee and/or his counsel; and (v) those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Movants respectfully submit that, in light of the nature of the relief requested, no other or further notice of this Motion is required.

## **<u>CONCLUSION</u>**

**WHEREFORE**, the Movants respectfully request that the Court enter an order, substantially in the form of the Proposed Order attached hereto as **<u>Exhibit A</u>**, disallowing and striking the Shkreli Claims, or, in the alternative, estimating the Shkreli Claims at $0.00 for all purposes in these Chapter 11 Cases (including for allowance, voting and distribution under any chapter 11 plan), and granting such other and further relief as the Court deems just and appropriate.


[Signature on next page]

Dated: August 23, 2023                              GREENBERG TRAURIG, LLP

                                                    */s/ Dennis A. Meloro*
                                                    Dennis A. Meloro (DE Bar No. 4435)
                                                    222 Delaware Avenue, Suite 1600
                                                    Wilmington, Delaware 19801
                                                    Telephone:  (302) 661-7000
                                                    Facsimile:  (302) 661-7360
                                                    Email:  melorod@gtlaw.com

                                                    -and-

                                                    Roger B. Kaplan (*pro hac vice*)
                                                    Alan J. Brody (*pro hac vice*)
                                                    500 Campus Drive, Suite 400
                                                    Florham Park, New Jersey 07932-0677
                                                    Telephone:  (973) 360-7957
                                                    Facsimile:  (973) 295-1257
                                                    Email:  kaplanr@gtlaw.com
                                                            brodya@gtlaw.com

                                                    *Counsel for Cerovene, Inc. and Dr.
                                                    Reddy's Laboratories, Inc.*